## John Roche v. Anna L. Norfleet.

1. RESCISSION OF CONTRACTS.—*Placing a Party in Statu Quo.*—In exercising the right to rescind a contract of sale it is sufficient, where the buyer has given his worthless notes for the price, that the seller in his suit brought to disaffirm the sale, leaves the court to return the notes and place the buyer in *statu quo.*

2. SAME—*Willful Concealment—Discovery of the Fraud.*—When once it is established that there has been a fraudulent representation, or a willful concealment, by which a party has been induced to enter into a contract, it is in general no answer to his claim to be relieved from such contract, to say that he might have discovered the truth by proper inquiry.

3. SAME—*Affirmance Through Igno. ince.*—If the contract is affirmed while the party is ignorant of the fact which would authorize a rescission he will not be prevented from afterward rescinding.

4. APPELLATE COURT PRACTICE—*Objections to Equity Jurisdiction Must be Raised in the Court Below.*—The objection to the jurisdiction of a court of equity on the ground that there is a remedy at law can not be urged for the first time in a court of review.

5. EQUITY PRACTICE—*Rescission of Contracts.*—When a transaction including a conveyance of land is rescinded for fraud, the whole transaction is null and void, and in contemplation of law, there has been no delivery of the deed. It is not necessary to require a reconveyance of the land; a return of the deed is sufficient.

6. APPELLATE COURT—*Amendment of a Decree.*—The Appellate Court in this case amends the decree instead of remanding the case for that purpose.

**Bill to Rescind a Contract.**—Error to the Circuit Court of Moultrie County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 6, 1895.

W. G. COCHRAN and R. M. PEADRO, attorneys for plaintiff in error.

Frank M. Sheridan, Harbaugh & Whitaker and I. R. Mills, attorneys for defendant in error.

Opinion per Curiam.

This was a bill in chancery to set aside and cancel a certain contract entered into by and between the parties, whereby the defendant obtained possession of a stock of goods from the complainant. By the terms of the contract the defendant was to convey certain lands in Garfield county, Kansas, valued at $4,500, to the complainant—pay to a creditor of complainant the sum of $203.48 and execute notes for $1,300, with satisfactory security, in payment for the goods.

The conveyance of the land was made, the notes were executed, and to secure the same a mortgage was also executed upon a certain house and lot in the town of Randolph, Riley county, Kansas, and then the goods were delivered to the defendant.

The ground of rescission alleged in the bill was the fraud of defendant in misrepresenting the value of the lands so conveyed, and the condition of the title thereto, as well as that of the property in Randolph.

The decree was according to the prayer of the bill. The defendant has brought the case here by writ of error.

The abstract of the record as furnished by the plaintiff in error has been found very incomplete, and in order to obtain a fair view of the case, we have been compelled to examine the testimony as reported by the master in chancery. That report is unnecessarily tedious, and is incumbered by much extraneous matter, consisting of protracted and unseemly controversies between counsel during the taking of the testimony, and by a prolix and tiresome method in the examination and cross-examination of witnesses. We would have been entirely justified in affirming the decree for the want of a proper abstract, but have not done so and have carefully read the evidence as it appears in the record.

It is not necessary to state in detail, or even in a general

way, the substance of the proofs.. We shall merely present the conclusion reached in that respect, which is that we thoroughly agree with the trial court that the allegations of fraud and deceit alleged in the bill are established by the preponderance of the evidence.

The land conveyed was practically of no value whatever. It did not answer the description given as to its topography, its fertility, its improvements, the crops then there, or that year produced, or its location with respect to the county seat.

A more glaring fraud could not well be imagined. There is no possible room to say that the difference between the facts as represented and as they were, might be ascribed to the ordinary exaggerations which may be expected. Moreover, the land, worthless as it was, had an incumbrance upon it in the shape of a mortgage for $1,000 to one William Coulter, Jr., who had recently died. In order to make clear the abstract of title, the defendant (plaintiff in error) caused one George Coulter to appear before an officer authorized to take acknowledgments and personate the deceased mortgagee, William Coulter, Jr., and acknowledge in his name a release of this mortgage. Thus crime was added to fraud. The mortgage given to secure the deferred cash payments was of no value because the property in Randolph thereby affected was worth less than the indebtedness and was already incumbered for its full value or more, contrary to the express representations of the defendant. It is argued in his behalf that the goods were not worth $6,000, and that the complainant was also guilty of substantial misrepresentation. The evidence is conflicting as to this point, but it is not to be denied that the defendant inspected the goods with all desired care and knew what he was getting. Nothing was concealed from him, nor was there any effort to mislead him. If the value of the goods was over-estimated, there is no proof to show that there was any intentional or fraudulent over-statement. With a fair opportunity for inspection, the defendant was satisfied to take them at the agreed price. It is very clear that whatever the fair value was he, would realize a considerable sum if he could get

possession and convert the stock into money, as no doubt he intended to do, without paying the two $500 notes.

He could well afford to pay the first note and also the sum assumed to the creditor, and as the land was worthless, as was the security for the two $500 notes, and as he was insolvent, the complainant would realize not more than about $500 for the goods. It is reasonably clear the scheme was designedly fraudulent and therefore the complainant had a perfect right to obtain a complete rescission of the whole transaction.

It is urged, however, that the complainant could not, and that the decree does not, put the defendant in *statu quo.*

We think the proof shows that defendant, while he was in possession of the goods realized from sales more than he put in either by way of payments under the contract or by way of new goods added to the stock. Of the $203.48, which he was to pay to complainant's creditor, he paid but $100, and his note, which he gave for the residue, was returned to him by the creditor.

As to an item of $175, which he claims as a payment on the note last maturing, we think the proof shows that the order for that sum drawn upon him by the complainant and which he accepted was not in fact paid either by cash or by new notes as he insists it was, but that it was taken up by the complainant from the drawee by paying the amount thereof and was presented to the master for cancellation.

A suggestion found in the brief, that the case was not one for a court of equity because there was a remedy at law, may be answered by reference to the well settled rule that such an objection can not be urged for the first time in a court of review; but if the point were before us it would suffice to say that fraud is a substantial head of jurisdiction in equity and that there were circumstances and features of the case which fairly invoked the aid of a court of chancery.

It is urged that complainant after a full knowledge of the fraud elected to abide by the transaction and thereby waived the right to rescind. This is based upon her supposed action in regard to the two $500 notes which she assigned to a bank. Just when this was done, with reference to the time

when she learned fully as to the fraud, does not very clearly appear. We may fairly presume that the notes were placed in bank as collateral, or perhaps were discounted before the discovery of the fraud. It may be that one of the notes was protested for non-payment after the bill was filed, but it does not appear this was done at the instance of the complainant. On the contrary, from the indorsements we might well infer it was at the instance of the bank.

However this may be the complainant was responsible to the bank in respect to the paper and was compelled to take it up, and it appears that was done, for the note was by the complainant presented to the master for cancellation.

We think there was nothing in this to bar the relief sought by the bill.

It is also urged that the decree is defective in not requiring the complainant to reconvey the land and release the mortgage, and authorities are cited to show that merely returning a deed after delivery does not revest the title in the grantor.

The answer is, that because of fraud the whole transaction was to be deemed null and void.

Hence there was in contemplation of law no delivery or acceptance of either the deed or the mortgage, and it was sufficient to return the same to the grantor. It does not appear and is not claimed that these documents were placed on record by the complainant, and therefore it is not necessary that she should in any wise be connected with the record of the title. It is also urged that the decree is too vague and indefinite in describing what papers should be returned by complainant to defendant for cancellation. That portion of the decree is as follows:

" But before said goods shall be delivered to complainant, she, or the master in chancery, shall turn over to the possession of defendant, for cancellation, all of said papers that she has received, and now has, from the defendant, during or under said sale or transfer."

It would seem from the proof that the deed, the mortgage, the two $500 notes, and the order for $175, and exhibit II (which was a written statement as to the character of

Patton v. The People.

the land), were all the papers which were received by the complainant from the defendant, and that these were all placed in the hands of the master during the taking of the proofs, so that the words "and now has," referring to the complainant, were inapt and might well have been omitted. It is also true that a more specific statement of the papers to be returned would have been better. But if it should be held that there are substantial defects in the form of the decree, it seems quite clear that under our statute of amendments and jeofails the trouble may be obviated by amendment. The decree ought not to be reversed on that account. Had the attention of the court been called to the matter, the necessary correction would no doubt have been made below, and it may be made here.

Accordingly the decree will be amended here so as to provide that the master in chancery, having received from the complainant the said deed and the said mortgage and the said two promissory notes, being the deed, mortgage and notes specified in the bill, and the order for $175 drawn by the complainant per J. K. Norfleet upon defendant, dated October 11, 1893, being the order referred to in the proofs taken by said master, shall by the said master be marked canceled and returned to the defendant, as a condition of the return of said stock of goods to the complainant, and that if the defendant shall decline to receive said papers, the same being so canceled, shall be filed with the clerk of said Circuit Court, subject to the order of said defendant, and the decree so amended will be confirmed at the cost of the plaintiff in error.    Affirmed.